Craig M. Stainbrook, Calif. State Bar #160876
E-mail: craig@stainbrookllp.com
STAINBROOK & STAINBROOK, LLP
412 Aviation Boulevard, Suite H
Santa Rosa, California 95403
707.578.9333 phone
707.578.3133 fax

Attorneys for Defendants,
Sonoma County Go Local Cooperative,
Incorporated, and Sustaining Technologies, LLC

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Kelley Rajala, | Case No.: 15-CV-00442-JST |
| Plaintiff, | **NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT BY SONOMA COUNTY GO LOCAL, INC. AND SUSTAINING TECHNOLOGIES, LLC; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF** |
| vs. | |
| Sonoma County Go Local Cooperative, Incorporated, et al., | |
| Defendants | |

Sonoma County Go Local Cooperative,
Incorporated and Sustaining Technologies,
LLC,

          Counterclaimants,
   vs.

Rajala, Kelley, an individual, and
Local Works, Flexible Purpose Corporation, A
California Corporation,

          Counterclaim Defendants.

Date:   August 18, 2016
Time:   2:00 pm
Dept:   Courtroom 9 - 19th Floor

Honorable Jon S. Tigar

Deadline to File Dispositive Motions:
07/01/2016
Pretrial Conference: 09/09/2016
Trial: 09/26/2016

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

PLEASE TAKE NOTICE that on August 18, 2016, at 2:00 p.m., before the Honorable Jon S. Tigar in Courtroom 9 on the 19th Floor of the United States District Court, San Francisco Division, 450 Golden Gate Avenue, San Francisco, California, Defendants Sonoma County Go Local Cooperative, Incorporated and Sustaining Technologies, LLC, (collectively, "Defendants") will and hereby do move the Court for partial summary judgment in favor of Defendants and against Plaintiff Kelley Rajala ("Rajala") with regard to Rajala's claims for copyright infringement, contributory copyright infringement, vicarious copyright infringement, and false advertising, alleged in the Complaint on file herein, and for an order that any final judgment entered in this action against Defendants shall, in addition to any matters determined at trial, award judgment as established by such adjudication.

This motion is made on the grounds that Rajala's copyright registrations are invalid group registrations, and are also invalid single work registrations. Without proper registrations, Rajala cannot maintain her claims for copyright infringement and false advertising against Defendants. This motion is also made on the grounds that Rajala's logo designs and the registered compilation thereof, lack the requisite level of originality to maintain a claim for copyright infringement.

This Motion shall be based on this Notice, the Memorandum of Points and Authorities in Support, the Declaration of Craig M. Stainbrook, and such evidence as is presented at the time of the hearing, and any other material the Court shall deem just and proper.

Respectfully Submitted,

Dated: June 28, 2016             **STAINBROOK & STAINBROOK, LLP**

By: */s/ Craig M. Stainbrook*
Craig M. Stainbrook
*Attorneys for Defendants*

- 1 -
NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT BY SONOMA COUNTY GO LOCAL, INC AND SUSTAINING TECHNOLOGIES, LLC

Case. No. 15-CV-442-JST

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
PURSUANT TO CIVIL LOCAL RULES 7-1, 7-2, 56-1, 56-2**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................. 1

II.   PROCEDURAL BACKGROUND ........................................................ 2

III.  FACTUAL BACKGROUND ................................................................ 3

IV.   LEGAL ANALYSIS.............................................................................. 10

      A.    SUMMARY JUDGMENT STANDARD.................................... 10

      B.    RAJALA'S COPYRIGHT REGISTRATION IS NOT ENTITLED
           TO A PRESUMPTION OF VALIDITY ................................. 11

      C.    THE COPYRIGHT REGISTRATION IS INVALID AND SHOULD
           BE CANCELLED ..................................................................... 13

           1.    Rajala Does Not Have a Valid Group Registration Because the
                Individual Logos Do Not Share the Same Publication Date......... 13

           2.    The Copyright Registration Contains Inaccurate Information
                Rajala Knew to Be False and That Information Would Have
                Caused the Register to Refuse Registration .................................. 16

           3.    The Logos – Individually and as Set Out in the Single Sheet
                of the Deposit -- Lack Sufficient Originality and Creativity ........ 17

      D.    GOLOCAL OWNS COPYRIGHT RIGHTS IN THE LOGOS ............... 22

      E.    THE SINGLE SHEET REGISTRATION IS A COMPILATION THAT
           INCLUDES MATERIAL NOT IDENTIFIED AS PREEXISTING,
           UNLAWFULLY USED BY RAJALA, AND PROVIDES THIN
           PROTECTION THAT SCGLC HAS NOT INFRINGED ...................... 23

V.    CONCLUSION...................................................................................... 25

-i-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT BY SONOMA COUNTY GO LOCAL, INC AND SUSTAINING
TECHNOLOGIES, LLC

Case. No. 15-CV-442-JST

# TABLE OF AUTHORITIES

## Cases

*Benay v. Warner Bros. Entm't Inc.*, 607 F.3d 620 (9th Cir. 2010) ...................................... 11

*Brown v. Latin Am. Music Co.* 498 F.3d 18 (1st Cir. 2007) ...................................... 12

*Cabrera v. Teatro del Sesenta, Inc.*, 914 F.Supp. 743 (D.P.R.1995)...................................... 12

*Entm' Research Grp., Inc. v. Genesis Creative Grp., Inc.,* 122 F.3d 1211 (9th Cir.1997)..11

*Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340 (1991) .... 18, 19

*Kay Berry, Inc. v. Taylor Gifts, Inc.,* 421 F.3d 199. 2 (3d Cir.2005)................................... 15

*Kodadek v. MTV Networks*, 152 F.3d 1209 (9th Cir. 1998) ................................................ 12

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140 (9th Cir.2003) ............... 11

*McLaren v. Chico's FAS, Inc.,* No. 10 Civ. 2481(JSR), 2010 WL 4615772, at *2–*3
    (S.D.N.Y. Nov. 9, 2010) ................................................................................... 15

*Olander Enterprises, Inc. v. Spencer Gifts, LLC,* 812 F.Supp.2d 1070
    (C.D. Cal., 2011) ................................................................................ 14, 16

*Richlin v. Metro–Goldwyn–Mayer Pictures, Inc.,* 531 F.3d 962, 973 (9th Cir.2008) ......... 14

*S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 (9th Cir.1989)...................................... 11

*S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, at 1085; 12 U.S.P.Q.2d 1241 (1989).............. 13

*Satava v. Lowry,* 323 F.3d 805, 810 (9th Cir. 2003)........................................................... 19

*Syntek Semiconductor Co., Ltd. v. Microchip Technology Inc.*, 307 F.3d 775
    (9th Cir.2002) .................................................................................................. 18

*United Fabrics Int'l, Inc. v. C & J Wear, Inc.,* 630 F.3d 1255, 1259 (9th Cir.2011) .......... 14

## Statutes

17 U.S.C. § 101 ....................................................................................................... 14, 16

17 U.S.C. § 408(c) ......................................................................................................... 11

17 U.S.C. § 410(c) .................................................................................................... 11, 12

37 C.F.R. § 202.1(a) ...................................................................................................... 19

37 C.F.R. § 202.3(a)(2)(i) .............................................................................................. 13

37 C.F.R. § 202.3(b)(4)(i)(A)......................................................................................... 14

37 C.F.R. § 202.3(b)(5)-(1)............................................................................................ 14

37 C.F.R. § 202.3(b)(5)-(11).......................................................................................... 13

U.S.C. § 410(c) ............................................................................................................. 12

## Other Authorities

*Compendium II: Compendium of Copyright Office Practices* § 607.01 (1984) ................. 14

Compendium III: Compendium of Copyright Office Practices § 1100 (2014) ................... 13

*Compendium III: Compendium of Copyright Office Practices* § 1100,
    esp. §§ 1101-(2014) ......................................................................................... 15

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT BY SONOMA COUNTY GO LOCAL, INC AND SUSTAINING
TECHNOLOGIES, LLC

Case. No. 15-CV-442-JST

*Compendium III: Compendium of Copyright Office Practices* § 313.4(B) (2014)..............18

Copyright Office. Section 411(b).........................................................................................16

Section 308 of the Copyright Act.........................................................................................18

Section 411 of the Copyright Act.........................................................................................16

U.S. Copyright Office, *Help: Type of Work*.......................................................................14

**Treatises**

3 Nimmer on Copyright § 12-11............................................................................................12

3 Nimmer on Copyright, § 12.11, at 12-195 *2424 (2006) ..................................................12

3 Nimmer on Copyright § 7.21 [A] (1989) ...........................................................................18

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL
SUMMARY JUDGMENT BY SONOMA COUNTY GO LOCAL, INC AND SUSTAINING
TECHNOLOGIES, LLC

Case. No. 15-CV-442-JST

# I.    INTRODUCTION

This is an action for copyright infringement by Plaintiff Kelley Rajala ("Rajala") against Sonoma County GoLocal Cooperative, Incorporated ("SCGLC") and Sustaining Technologies, LLC ("ST"), under the United States Copyright Act, 17 U.S.C. § 101, *et seq*, as well as false advertising, unjust enrichment, cancellation of state trademark registration under California State law, declaratory relief, and related causes of action. By her originally filed Complaint (the operative pleading), Rajala accuses Defendants of using logos in connection with their businesses that that infringe copyright rights Rajala purports to own in a registration featuring numerous different GoLocal designs (the "GoLocal Logos").

The alleged predicate for this litigation rests on a single copyright registration Rajala obtained. The registration comprises a single page displaying several rows and columns of 30 different GoLocal Logos. As a basis for suit, the predicate is flawed and legally untenable.

Firstly, Rajala's copyright registration is an invalid "single work" registration because it includes a group of published works not first published together, and therefore if fails to qualify as a "single unit of publication" for purposes of a "single work" registration. On this basis alone, the claims for copyright infringement must be dismissed.

Secondly, even if the registration were valid, the purported "works" (the individual logos) comprising the registration constitute nothing more than a very ordinary geometric shape (a circle) with simple color fill, and including a few words in an ordinary typeface. None of the elements singularly or in combination constitutes a work having sufficient originality to warrant protection under the Copyright Act. Further, even the selection, arrangement, and organization of the GoLocal Logos in the registration is nothing more than those ordinary shapes and words put into rows and columns. Nothing about the single sheet itself rises to the threshold level of originality required for protection under the Copyright Act. The GoLocal Logos standing alone or as arranged in rows and columns lack sufficient originality to merit copyright protection.

Thirdly, even if the registration was considered to be a valid compilation protecting previously published works, the compilation includes works owned by SCGLC because they are works created by Rajala in the course and scope of her employment with SCGLC. Therefore, under applicable Copyright law, SCGLC is the author of a substantial portion of the compilation or collective work. In consequence, SCGLC has the rights, whatever they may be, in the works prepared by Plaintiff within the scope of her employment.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY
JUDGMENT BY SONOMA COUNTY GO LOCAL, INC AND SUSTAINING TECHNOLOGIES, LLC
Case. No. 15-CV-442-JST

Finally, the registration as a compilation is also invalid, as it comprises nothing more than a mechanical selection, arrangement, and coordination of the previously published GoLocal Logos, and therefore it also does not rise to the level originality sufficient to merit copyright protection. Any protection that might be conferred on the compilation extends only to the specific selection, arrangement and coordination of the previously existing works, not in the individual works themselves, and Plaintiff has no evidence that Defendants have reproduced or distributed any materials that include such a selection, arrangement, or coordination.

For each of these reasons, Defendants are entitled to summary adjudication on Rajala's copyright claims and the derivative claim for false advertising, which is based on all of the alleged operative facts on which the copyright claims rest.

## II.     PROCEDURAL BACKGROUND

On January 30, 2015, Plaintiff filed an original complaint against SCGLC and ST alleging causes of action for copyright infringement as to the Work incorporated into the Complaint, as well as California false advertising, unjust enrichment, cancellation of California trademark, and declaratory judgment. (Dkt. No. 1) The originally filed complaint is the operative pleading in this action.

On April 3, 2015, SCGLC and ST answered and counterclaimed against Rajala and Local Works, Flexible Purpose Corporation ("Local Works"), seeking declaratory relief (of non-infringement), declaratory relief of invalidity and cancellation of copyright registration, a declaration that SCGLC owns the copyright registration, trademark infringement and unfair competition, and deceptive, false, and misleading advertising. (Dkt. No. 19) Counterclaim Defendants answered and counterclaimed on April 27, 2015. (Dkt. No. 24) SCGLC and ST answered this pleading on May 26, 2015. (Dkt. No. 34)

At the first Case Management Cconference, the matter was directed to the Court's ADR program. The parties stipulated to a hybrid mediation/early neutral evaluation and stipulated to an informal and limited pre-ADR discovery process to reduce both the disruption to business and the financial burden on the parties.

On October 29, 2015, the parties participated in an agreed upon hybrid mediation/ENE, which was conducted as a mediation only. At the next Case Management Conference the parties agreed to an ENE, and on April 29, 2016, the parties participated in an ENE. The parties concluded a settlement agreement as to material terms, but the parties were unable to finalize a

settlement agreement before the continued deadline for dispositive motions. Defendants therefore bring this motion to preserve their right to seek summary judgment.

## III. FACTUAL BACKGROUND

Rajala was a founding member of SCGLC and its former executive director. She resigned her position on September 21, 2010, ten days after the Board of Directors of SCGLC demanded that she stop her self-dealing and other activities contrary to the goals of and against the best interests of SCGLC, including the formation and operation of a business entity directly competitive to SCGLC while she was still acting as SCGLC's executive director.

Immediately after her resignation, to the surprise and dismay of GoLocal, Rajala claimed that she personally owned certain SCGLC assets – specifically, the logos used by SCGLC in its business – and made unreasonable demands on SCGLC based on the false claims of ownership. When her demands and tactics failed, she filed this lawsuit.

Defendant SCGLC is a network of locally-owned businesses, residents, non-profit organizations, and government agencies working collectively to build a thriving, local economy by supporting local, independently-owned businesses and promoting sustainable practices. Defendant ST is worker-owned and cooperatively managed and provides strategy, organizational tools, and technology for communities and organizations trying to build local economies. In February 2012, SCGLC and ST entered into a contract under which ST would provide services to SCGLC, including certain IT functions, implementing and managing a rewards card program, and processing SCGLC memberships.

SCGLC came into existence in early 2008, but its formation history dates back to 2006, when Don Shaffer, BALLE's second executive director, asked Terry Garrett ("Garrett") to explore starting a local business network in Sonoma County. "BALLE", an acronym for the Business Alliance for Local Living Economies, is an organization devoted to advancing economic "localism." At that time, BALLE had its national headquarters in San Francisco, but it had no networks in California. Garrett was living in Sonoma County at the time and was working as a business and marketing consultant for BALLE. Garrett was attending meetings of the Sebastopol Economic Forum, where he met Philip Beard and Derek Huntington. Shaffer later introduced Garrett to Chris Mann ("Mann"), and Scott Leonard ("Leonard"), and Matt Reynolds ("Reynolds"), each young business leaders and entrepreneurs in Sonoma County, and suggested they be included in efforts to start a network.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT BY SONOMA COUNTY GO LOCAL, INC AND SUSTAINING TECHNOLOGIES, LLC

Garrett worked with Huntington, Mann, and Leonard, along with Phillip Beard ("Beard"), Rajala, and many others, to get the Sonoma County chapter of BALLE named and underway. Even though "Sonoma County BALLE" was aligned with BALLE values, a rift within the steering committee members of BALLE Sonoma County, and a request by BALLE national not to incorporate the BALLE name in a local chapter, motivated a majority of the steering committee, including Huntington, Mann, Beard, Rajala, and others, to break away from BALLE and form a separate company with its own leadership and control.

Working independently of BALLE Sonoma County, another small group, self-identified as the "Relocalizers," was also meeting to discuss ways to promote a more sustainable and resilient local economy. The Relocalizers decided to form a cooperative that would operate under the name "Go Local." The BALLE Sonoma County group and the Relocalizers eventually learned of one another, and in March 2008, the groups met to explore their common ground. In short, order it was decided that it would be mutually advantageous to join forces.

The new group met in April 2008 and formed the "Sonoma County GoLocal Cooperative." Using a "cooperative" model, the group collaborated in early-phase decision-making, including decisions with respect to name selection and brand ideas. It immediately adopted as its name the name that the Relocalizers had coined, viz., "Go Local." The members of the group met to discuss the association's initial tasks and goals, and to divide the tasks among the members according to members' respective interests and skills. Among the tasks and goals was to transform the association into a corporation in a relatively short period of time. To that end, steps were taken to form a corporation. This culminated in the formation of SCGLC, a California corporation, on October 16, 2008, at which time the assets of the association, including any intellectual property and property rights, were merged into and/or assigned and transferred to SCGLC.

Also among the original tasks and goals was the creation of logos, slogans, and other identifying indicia for use by the association and its constituents (i.e., its local business members). A sub-group of the association's members, including Rajala, was assigned the task of creating logos, designs and the like, for presentation to all of the members for their consideration, modification, and, upon reaching a consensual approval, adoption and use. Thus, logo design was within the scope of Rajala's regular and ordinary responsibilities for the association. Work was done under tight time constraints in April 2008 so that logos would be ready for the

Sustainable Enterprise Conference ("SEC") that would take place in May of 2008. All of the members of the group understood that the association would participate in SEC as an association, not as individuals or even an association on behalf of the individuals. **[Ex. 1, Decl. of David France; Ex. 1A, excerpts, Depo of David France (38:23-40:1); Ex. 2, Decl. of Joseph Faleczyk; Ex. 3, Declaration of Jay Beckwith; Ex. 4, Decl. of Christopher Mann; Ex. 5, Decl. of Derek Huntington; Ex. 6, Decl of Philip Beard; Ex. 7, Decl. of Oren Wool]**

The initial concepts for the association's logos and slogans were inspired by BALLE materials and guides regarding how to launch and brand "local first" campaigns. Rajala merely modified certain BALLE materials and presented the "concept" (as opposed to a finished product) to the sub-group for input and modification. As evidenced by correspondence among the sub-group members, including Rajala, Huntington, and Mann, the sub-group members commented upon and modified Rajala's initial concept. **[*Id.*]**

Early in this process, Rajala wrote, "Let's all get together and modify / refine this concept and define our next steps." **[Ex. 8]** Changes from Rajala's initial concept included changes in fonts, comparative sizes of logos elements, removal of text originally included, and the like, all of which contributed to the overall look of the logos. The logos developed in advance of the SEC (the "Original Logos") were thus a joint, collaborative effort among Rajala, Huntington, Mann and possibly others.

The design of the Original Logos was subject to the specifications, requirements and instructions of the association, and the Original Logos' ultimate appearance, adoption and use were subject to the approval of the association.

According to plan, the association displayed and used certain of the Original Logos at, and in connection with, the SEC, thereby commencing trademark and/or service mark of the Original Logos.

Subsequent to the SEC Conference, in the early summer of 2008, Rajala left for Minnesota, where she remained throughout the summer and into the fall of 2008. David France acted as the interim director of GoLocal, focusing his attention on researching and preparing an application to incorporate as a California cooperative. **[See Ex. 1, Decl. of France]** The group members were unaware of whether Rajala intended to return to Sonoma County, and thus whether she would have anything further to do with the Go Local project. But the group continued work

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT BY SONOMA COUNTY GO LOCAL, INC AND SUSTAINING TECHNOLOGIES, LLC

Case. No. 15-CV-442-JST

entirely independently of Rajala – nothing about the continued work depended on her presence in any way.

As it turned out, Rajala did return to Sonoma County in the early fall of 2008 and reconnected with the group. Then, on October 16, 2008, the association changed its business entity status (previously an unincorporated association) and merged into SCGLC at the time of SCGLC's incorporation under California law as Sonoma County GoLocal Cooperative, Incorporated. All members of the association approved the formalization and fully understood that SCGLC would carry on legally as a surviving entity, that all of the assets of the association would be owned by SCGLC, including all rights in intellectual property developed prior to the incorporation, if any such existed, and that the separate existence of the association would disappear at the time of incorporation. There was nothing left for the association to do once that formality was accomplished.

An early founder, Susan Mauk, was appointed as the first Executive Director of SCGLC, but due to a serious family illness, Ms. Mauk was forced to step down, and Rajala assumed her duties.

At no time during the development process leading up to the finalization and ultimate approval of the Original Logos did Rajala ever claim that she personally (as opposed to the Association) owned the Original Logos or any rights therein. **[See Exs. 1-7]** Further, from the beginning of the GoLocal logo development process through the finalization and approval of the GoLocal Logos until shortly after Rajala resigned her position with SCGLC, Rajala never claimed that she personally owned the Original Logos, other GoLocal Logos, or any rights therein. Quite the contrary: during her tenure with SCGLC, Rajala affirmatively asserted the opposite position – that SCGLC owned the rights to all of the GoLocal Logos. **[Again, see Exs. 1-7; Ex. 1A (60:1-62:5; 109:24-120:4; also see Ex. 9, Decl. of Tanya Narath, and Ex. 10, Decl. of David Williams]**

More specifically, in or about April of 2009, Rajala, writing on behalf of SCGLC and on SCGLC letterhead, wrote to the City of Santa Rosa and alleged that certain actions the City was taking in using marketing materials similar to the GoLocal Logos were causing confusion between SCGLC and the City of Santa Rosa. **[Ex. 11, April 10, 2009 Ltr from Rajala to City of SR; and Ex. 12, April 2009 twitter feed]** As is clear from the letter itself, Rajala, did not

assert any rights owned by Rajala as an individual. Instead, she asserted rights owned by SCGLC.

In May of 2009, SCGLC made Terry Garrett ("Garrett") its Chief Operating Officer. Garrett immediately recognized that SCGLC was short of cash and needed funding. Roughly six weeks after Garrett became COO, the SCGLC board determined that Garrett and Rajala would have joint decision-making authority. Little more than a month later, pursuant to Garrett's recommendations, GoLocal drafted and adopted a new business plan as part of a prospectus for presentation to prospective grant fund sources and private investors. The prospectus included plans for raising bridge funding until SCGLC could become self-sustaining through membership fees. **[Ex. 13, SCGLC Business Plan]** The business plan, including the representations and warranties as to how the SCGLC would spend the funds, was drafted with Rajala's active participation and was expressly approved by Rajala. The same business plan was used by SCGLC in soliciting and obtaining grants and other sources of funding.

After SCGLC gained some bridge funding in the form of grants, it formed an executive management team that included Rajala, Terry Garrett, and Derek Huntington. Garrett and Huntington believed that the management team members should remain independent contractors in relation to SCGLC, but Rajala insisted that she herself become a paid employee and act as Executive Director. Accordingly, on or about November 2, 2009, Rajala and SCGLC entered into a written contract (the "Contract") whereby Rajala would receive compensation to act as Executive Director of SCGLC. In and as part of the Contract, Rajala made certain representations and warranties, including that she had no conflicts of interest in assuming her position as Executive Director. Further, the Contract provides that any works subject to copyright or trademark generated or conceived during the term of the agreement shall remain SCGLC's property. **[Ex. 14, Sections 1, 5, and 6]**

Prior to and at the time of the execution of the Contract, Rajala did not disclose (in the Contract or otherwise), that she claimed to individually own the Go Local Logos. Such ownership would have been a direct conflict with the interests of SCGLC. As Executive Director of SCGLC, Rajala owed a fiduciary duty and other duties to SCGLC. Moreover, while employed by SCGLC, design and marketing duties were within the scope of Rajala's employment. While employed by SCGLC, Rajala continued to develop promotional materials and to design member-inspired logos for membership drive campaigns.

A substantial portion of the GoLocal Logos Rajala designed while employed by SCGLC are among the logos over which Rajala now claims ownership and which comprise part of the "deposit" submitted to the Copyright Office as part of the application process for her Copyright Registration as asserted in the Complaint. **[Ex. 15, Copyright Registration; Ex. 16, KR0031, showing various GoLocal logo publication dates]** Rajala admitted that many of the GoLocal Logos featured on the copyright deposit were created and first published while she was employed with SCGLC, at least 1 year, and sometimes two years after the publication date of April 1, 2008, recited in the Registration. **[Ex. 17, Rajala deposition excerpts, pp. 90-104; 123:5-129:22]** Many of the logos featured on the deposit sheet have initial creation and publication dates that are uncertain, as many were developed in response to prospective member requests on an *ad hoc* basis. However, comparing the copyright deposit with Rajala's admissions regarding publication dates (including the written indications of **Ex. 16** and Rajala's testimony relating thereto in **Ex. 17**), it is certain and undeniable that during or after Rajala's tenure as an employed executive director, the following GoLocal Logos were created and first published: (1) CLEAN LOCAL; (2) LOCAL ARTS; (3) LIVE LOCAL; (4) LOCAL PRO; (5) LEARN LOCAL; (6) SMOKE LOCAL; (7) MEET LOCAL; (8); REPAIR LOCAL; (9) FRAME LOCAL; and (10) FIND LOCAL. Accordingly, fully 10 of the 30 GoLocal Logos appearing on the single sheet copyright deposit were created and published by SCGLC during or after Rajala's employment with SCGLC. SCGLC has never assigned its rights in these logos to Rajala.

Under the express terms of Rajala's Contract with SCGLC (**Ex. 14**), and under the applicable copyright law with respect to works for hire, SCGLC is the author and indisputably owns (at a minimum) the above-identified GoLocal Logos or a substantial portion thereof. Each of the GoLocal Logos developed after Rajala began her employment with SCGLC was appropriated by Rajala (without SCGLC consent) and used to form part of the group or compilation of logos that Rajala submitted as her deposit to the United States Copyright Office, passing them off as her own, and misrepresenting them as all having been first published in April 2008.

In her capacity as Executive Director of SCGLC, Rajala encouraged SCGLC and its network of nearly 200 businesses to adopt and use the GoLocal Logos, to disseminate them in marketing materials and advertising, and otherwise to aggressively develop goodwill in the North Bay region inextricably connected to the GoLocal Logos. If Rajala actually believed that

she owned copyright rights in the GoLocal Logos, she entirely concealed and acted contrary to that belief. If SCGLC and its management knew that Rajala, if disaffected from SCGLC, would use a claim of personal ownership to adversely affect GoLocal, it would never have used the GoLocal Logos and would never have engaged in business with Rajala involved. This is evidenced by the fact that SCGLC was entirely blindsided by Rajala's post-resignation claim to an exclusive ownership interest of any kind in the GoLocal Logos. **[See Exs. 1-7, 9-10]**

As SCGLC membership grew in early 2010, the decision-making process became more formal. As a result, Rajala's level of control diminished. At about the same time, in early 2010, Rajala presented her idea of developing "Share Exchange" to the executive management team of SCGLC. At first, she proposed the project as a possible initiative for SCGLC. But because the project was not included in the business plan successfully used to solicit bridge funding, and because revenue from membership and sponsorship sales would be critical to maintain financial viability through all of 2010, the executive management team put the project on hold, pending further evaluation, until the next fiscal year. Accordingly, with sales revenue insufficient to fund SCGLC through the second half of 2010, the executive management team told Rajala that Share Exchange was expressly disapproved for any active development for SCGLC at that time.

Rajala disregarded the decisions of the executive management team and began covertly devoting most of her time to her individual Share Exchange project, an act of defiance that would imperil the economic viability of SCGLC. In pursuit of her own interests and contrary to SCGLC interests, she siphoned off administrative help, used GoLocal resources, and created both company and third party support for and allegiance to the Share Exchange project, working in the shadows and passing it off as a project approved by and affiliated with SCGLC.

In the late summer or early fall of 2010, Board members of SCGLC approached Rajala about her unwillingness to follow decision-making procedures and her failure to perform as expected. During an SCGLC Board meeting on September 10, 2010, Rajala admitted that she had not been following decision-making protocol and that she had not been giving her best and full time efforts to SCGLC. She admitted that her motivation in performing poorly was to punish SCGLC and her co-workers for not agreeing with her decisions and because she did not want income from her efforts to be credited to Huntington and Garrett. **[Ex. 18, SCGLC Board Meeting minutes, 9/10/10]**

During this Board meeting, Rajala apologized for her conduct and agreed to mend her ways by following the decision-making protocol and by devoting her full time and best efforts to SCGLC. Evidently having a very quick change of heart, only 10 days later, on September 21, 2010, Rajala resigned as executive director and as a member of SCGLC.

It was only after Rajala resigned from SCGLC that she first claimed to be the owner of the Go Local Logos; at no time prior to her resignation had Rajala ever stated to any other member of the Association and/or SCGLC that she personally owned any rights in or to the GoLocal Logos. After resigning and claiming she was the owner of the GoLocal Logos, Rajala attempted to extract payment from SCGLC for the use of the GoLocal Logos. SCGLC steadfastly declined to such an improper arrangement and immediately called Rajala out on her duplicity and bad faith, all to no avail.

Negotiations between Rajala and SCGLC began immediately after Rajala's resignation and continued for several years regarding the use of the SCGLC "brand" and other unresolved issues relating to Rajala's resignation and departure from SCGLC. No agreement was concluded.

On or about June 7, 2013, more than 5 years after the alleged first date of publication for any of the GoLocal Logos, Rajala filed an application for registration of a single page containing 30 individual logos (the "Deposit"), all of which contain the word "Local" together with another word (e.g., Go Local, Eat Local, Drink Local, etc.). **[See Ex. 15]**

In the copyright application, Rajala made numerous affirmative misrepresentations and failed to disclose material facts, knowing they were false. Unaware of the false information, the Copyright Office granted Rajala Copyright Registration VA 1-899-501 (the "Copyright Registration").

## IV.    LEGAL ANALYSIS

### A.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the evidence before the Court "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and an issue is "material" when its resolution might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The

moving party bears the initial burden of demonstrating either that there are no genuine material issues or that the opposing party lacks sufficient evidence to carry its burden of persuasion at trial. *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. 2548; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987). Once this burden has been met, the party resisting the motion "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). The court does not make credibility determinations, nor does it weigh conflicting evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992).

**B.    RAJALA'S COPYRIGHT REGISTRATION IS NOT ENTITLED TO A PRESUMPTION OF VALIDITY**

Copyright Registration VA 1-899-501, (the "Copyright Registration") **[Ex. 15]**, is the only registration at issue in this case. Ordinarily, a copyright registration is "*prima facie* evidence of the validity of the copyright and the facts stated in the certificate." 17 U.S.C. § 410(c); see also *S.O.S., Inc. v. Payday, Inc*., 886 F.2d 1081, 1085 (9th Cir.1989). Defendants therefore have the burden of rebutting the facts set forth in the copyright certificate. ..., 886 F.2d at 1085-86 (explaining that section 410(c)'s presumption shifts the burden of coming forward with evidence to the defendant); see also *Lamps Plus, Inc. v. Seattle Lighting Fixture Co*., 345 F.3d 1140, 1144 (9th Cir.2003). " 'To rebut the presumption [of validity], an infringement defendant must simply offer some evidence or proof to dispute or deny the plaintiffs *prima facie* case of infringement.' " *Lamps Plus, Inc.*, 345 F.3d at 1144, quoting *Entm' Research Grp., Inc. v. Genesis Creative Grp., Inc.,* 122 F.3d 1211, 1217 (9th Cir.1997). A certificate does not prove and resolve a plaintiff's entire infringement case; a copyright registration must be properly obtained. 17 U.S.C. § 408(c).

If the plaintiff in a copyright infringement action does not have a valid registration of its work, or cannot establish any of the elements of its claim, summary judgment for the defendant is appropriate. See, e.g., *Benay v. Warner Bros. Entm't Inc.*, 607 F.3d 620 (9th Cir. 2010) (summary judgment for defendants on plaintiffs copyright infringement claim affirmed on the ground that defendants' film was not substantially similar to the protected elements of plaintiff's screenplay); *Lamps Plus, Inc*., supra (summary judgment for defendant in a copyright

infringement action affirmed on the ground that plaintiff was "unable to survive the necessary first step of an infringement action because the copyright is invalid"); *Kodadek v. MTV Networks*, 152 F.3d 1209 (9th Cir. 1998) (summary judgment in copyright infringement action affirmed because plaintiff's registration was invalid).

The Copyright Registration bears an effective date of October 7, 2013, and a filing (certification) date of June 7, 2013. The date of 1st publication is indicated as April 1, 2008.

As provided in 17 U.S.C. § 410(c), "[i]n any judicial proceedings the certificate of registration made before or within five years after first publication of the work shall constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court. "[W]hen more than five years has elapsed between first publication and registration, the court is not required to accept the *prima facie* validity of the copyright." *Brown v. Latin Am. Music Co.* 498 F.3d 18 (1st Cir. 2007) In that case, the district court explained that Congress included this five-year provision in the Act of 1976 "on the ground that the longer the lapse of time between publication and registration, the less likely to be reliable are the facts stated in the certificate." *Brown*, slip op. at 7-8 (citing 3 Nimmer on Copyright § 12-11 and *Cabrera v. Teatro del Sesenta, Inc.*, 914 F.Supp. 743 (D.P.R.1995)).

Thus, a registration within five years of first publication is accompanied by a presumption of validity of the copyright, whereas a registration obtained after five years benefits from no presumption, and the weight given to such a registration is "within the discretion of the court." 17 U.S.C. § 410(c). See 3 Nimmer on Copyright, § 12.11, at 12-195 *2424 (2006) ("The significant difference between these two provisions [of the 1909 and 1976 Acts] is that the *prima facie* effect of registration was achieved under the 1909 Act whenever registration occurred whereas, under the current Act, it is limited to those registrations that occur before, or within five years after, first publication of the work.")

In the instant case, no presumption of validity should be given to the registration, particularly in view of Rajala's numerous misrepresentations made to the Copyright Office.

## C. THE COPYRIGHT REGISTRATION IS INVALID AND SHOULD BE CANCELLED

### 1. Rajala Does Not Have a Valid Group Registration Because the Individual Logos Do Not Share the Same Publication Date

Rajala's copyright registration is an invalid group registration and an invalid single work registration. Without a proper registration, Rajala cannot maintain her claims for copyright infringement against SCGLC and ST. As a prerequisite to maintaining an action for infringement of a copyright, the plaintiff must have properly registered the copyright with the Copyright Office. See, e.g., *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, at 1085; 12 U.S.P.Q.2d 1241 (1989).

Rajala's copyright registration at issue in this case contains thirty (30) separate logos set out on a single sheet in simple rows and columns (specifically, 5 rows of 4 columns, plus 2 rows of 5 columns, for a total of 30 logos). The logos as shown in the single sheet have never been used in the form shown as the Deposit, and not all of the logos individually have been used by Defendants, even as individual logos. Those that have been used, have been used individually or at times in groups or subsets of the logos shown in the Copyright Deposit.

Under the Copyright Act, there are only two possible ways that a copyright claimant can obtain a single registration for a set of multiple works: (1) a group registration, or (2) a single work registration.

Without any presumption of validity available, and in the face of evidence showing the invalidity of her registration, to establish the validity of her copyright registration, Rajala must show that she has satisfied the requirements for registration set forth in the federal regulations promulgated by the Register of Copyrights ("the Register"). Under the regulations, a copyright claimant must file a separate application to obtain a separate registration for each creative work for which the claimant seeks protection. See 37 C.F.R. § 202.3(a)(2)(i).

A claimant may register <u>multiple works</u> through a <u>single application</u> by satisfying the regulatory requirements for either a "group registration," see 37 C.F.R. § 202.3(b)(5)-(11), or a "single work" registration for a group of published or unpublished works, see id. § 202.3(b)(4); see Compendium III: Compendium of Copyright Office Practices § 1100 (2014).

A work is "published" for purposes of the Copyright Act when copies of the work are distributed to the public "by sale or other transfer of ownership, or by rental, lease or lending" or

offered to be distributed "to a group of persons for purposes of further distribution." 17 U.S.C. § 101. Since logos are not covered by any of the categories of works that may be covered by "group registration," see 37 C.F.R. § 202.3(b)(5)-(1), and Rajala's registration protects a group of logos that were published in advertising material, brochures, the SCGLC website, and through use by SCGLC members, Rajala must show that her registration satisfies the regulatory requirements for "single work" registration for a group of published works.

The Federal District Court for the Central District of California explained in *Olander Enterprises, Inc. v. Spencer Gifts, LLC,* 812 F.Supp.2d 1070 (C.D. Cal., 2011), "[a] claimant may obtain a "single work" registration for a group of published works if "all copyrightable elements ... are otherwise recognizable as self-contained works," the works "are included in a single unit of publication," and "the copyright claimant is the same" for all of the works. Olander at 1076, citing 37 C.F.R. § 202.3(b)(4)(i)(A). Rajala cannot dispute that the individual GoLocal Logos are recognizable as self-contained works, inasmuch as each was created separately and many are frequently used by GoLocal members separately. Under similar facts, the Court in *Olander* held:

> "The Court is persuaded that a group of published works must be first published together in order to qualify as a 'single unit of publication' for purposes of a 'single work' registration. Informal guidance provided by United States Copyright Office states that only those individual works '*first published* in a single unit of publication' will be covered by the single work registration. Id., citing *Compendium II: Compendium of Copyright Office Practices* § 607.01 (1984) (emphasis added); *see also* U.S. Copyright Office, *Help: Type of Work,* http://www.copyright.gov/eco/help-type.html (last visited Aug. 19, 2011) ("To register multiple individual works contained in the same unit of publication with a single application, the following requirements must be met: This publication must represent first publication of all of the works included in the registration. The registration must exclude any previously published work."). There is no controlling authority directly interpreting the "single unit of publication" requirement. *See United Fabrics Int'l, Inc. v. C & J Wear, Inc.,* 630 F.3d 1255, 1259 (9th Cir.2011) (noting that "a necessary element of a published-collection copyright is that the collection is sold, distributed or offered for sale concurrently" but that there is no such requirement for an unpublished collection). But the Ninth Circuit has held that courts should generally defer to the Register's interpretation of copyright statutes and regulations, *see Richlin v. Metro–Goldwyn–Mayer Pictures, Inc.,* 531 F.3d 962, 973 (9th Cir.2008) (discussing Ninth Circuit precedent in which the court deferred to the Register's reliance on the Compendium of Copyright Office Practices), and the few other courts who have addressed the issue have also deferred to the interpretation offered by the United

States Copyright Office. *See Kay Berry, Inc. v. Taylor Gifts, Inc.,* 421 F.3d 199, 206 n. 2 (3d Cir.2005) (noting government's interpretation that only those individual works first published in the single work will be covered by the single work registration but remanding to district court to determine in the first instance whether that interpretation presents a barrier to plaintiff's copyright registration); *McLaren v. Chico's FAS, Inc.,* No. 10 Civ. 2481(JSR), 2010 WL 4615772, at *2– *3 (S.D.N.Y. Nov. 9, 2010) (noting that Copyright Office's interpretation is entitled to at least some deference and concluding that "the most natural reading" of the regulation's requirement is that the works must be first published together to qualify as a single unit of publication). Moreover, the Court has not identified any other court that has rejected the interpretation that works must be first published together in order to satisfy the single unit of publication requirement."

*Id.*, at 1076-1077. [See also, *Compendium III: Compendium of Copyright Office Practices* § 1100, esp. §§ 1101-(2014)

Under this interpretation of a "single unit of publication," Rajala's copyright registration is not valid because the undisputed evidence shows that many of the individual GoLocal Logos were first published separately, at different times, in different publications, independently of many if not most other GoLocal Logos, and not as a single unit of publication. On the contrary, the evidence shows that after the creation and publication of the Original GoLocal logos at the May 2008 SEC conference, the other GoLocal Logos were developed and separately published over the course of several years.

As shown above **[Exs. 15-17]**, many of the GoLocal Logos were first created and published years after the Original GoLocal Logos were created and published. Over coached, and at times painfully evasive in her deposition, Rajala attempted to avoid directly answering questions about the registration and the alleged publication dates of the various logos. **[See Ex. 17, pp. 90-104; 123:5-129:22]** Rather than admitting the obvious – that numerous logos appearing on the Deposit were published long after the alleged first date of publication – she attempted to characterize all of the GoLocal Logos as "derivatives" or "modifications" of a logo she allegedly created years earlier, in 2002. However, despite her best efforts at obfuscation and misdirection, she admitted that many GoLocal Logos were, in fact, published on a date after April 2008. **[Again, see, Ex. 17, Depo. of Rajala, 90:4-104:4]** The registration and the attached exhibits – even Rajala's own testimony – bear out the truth of the matter.

Because Rajala cannot show that her copyright registration protects the collection of logos first published in a single unit of publication as required by the "single work" registration

regulations, Rajala cannot prove that she owns a valid copyright registration. Accordingly, Defendants are entitled to judgment as a matter of law with respect to Rajala's copyright infringement claims. See *Olander* at 1079.

## 2. The Copyright Registration Contains Inaccurate Information Rajala Knew to Be False and That Information Would Have Caused the Register to Refuse Registration

Prior to filing a complaint, Section 411 of the Copyright Act requires that a work be registered with the Copyright Office. Section 411(b), further states:

(1) A certificate of registration satisfies the requirements of this section and section 412, regardless of whether the certificate contains any inaccurate information, unless:

(A) the inaccurate information was included on the application for the copyright registration with knowledge that it was inaccurate; and

(B) the inaccuracy of the information, if known, would have caused the Register of copyrights to refuse registration.

(2) In any case in which inaccurate information described under paragraph (1) is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration.

In the copyright application, Rajala identified herself as the sole author and as the sole claimant. Rajala was not the sole author. Rajala identified herself as the sole claimant (or owner). Rajala was not and could not be the sole owner or sole claimant. Rajala also claimed the Deposit was first "published" on April 1, 2008. However, no party, including Rajala, has ever published the Deposit. Indeed, the Deposit is actually a compilation of individual GoLocal Logos [see 17 USC §101] that SCGLC has developed over the entirety of its existence, including during its preformation phase as an unincorporated Association. Many of the individual logos have either never been published or were first created and published after the date that Rajala's Employment Contract with SCGLC commenced. Further, and as noted above, several of the individual logos forming a part of the 30 logos comprising the Deposit were created after the term of Rajala's Employment Agreement with SCGLC commenced, in late 2009, such that an earlier publication date would have been impossible. Further still, several of the GoLocal Logos have never been published in any form at any time. Those include: SMOKE LOCAL; FIND LOCAL; MEET

LOCAL; and FRAME LOCAL. It was therefore impossible for the Deposit to have been published on or before on April 1, 2008.

Rajala did not inform the Copyright Office that the Deposit and several elements comprising the compilation had never been used or published and that the Deposit in the form submitted had never been published. At the time she filed the copyright application, Rajala knew that the Deposit had never been published in the form presented to the Copyright Office, and she further knew that numerous elements included in the Deposit were first created long after the alleged first publication date. Since she "created" the Deposit by collecting and assembling a collection of preexisting materials (viz., individual logos), the Deposit is considered a compilation (as the term is used in copyright law) [see III.E, below].

Rajala failed to disclose that the Deposit was a compilation of elements (individual logos), by reciting a false publication date that was long before many of the elements comprising the work were even conceived and created, and by failing to disclose SCGLC as a claimant. At the time of filing the application, Rajala knew full well that the statements she was making were false and that she was failing to disclose material information.

The Copyright Office relied on Rajala's false statements, intentional omissions, and inaccurate information in granting the Copyright Registration. Whatever Rajala's intent, had the Copyright Office known that there were additional authors and additional claimants, that the Deposit was a compilation, that no publication had ever been made of the Deposit, and that publication of numerous of the individual logos included in the Deposit was made only on a date much later than April 2008, it would not have granted the Copyright Registration.

Accordingly, as a threshold matter in this case, the Copyright Office should be consulted to determine whether there was inaccurate information in the application such that, if known, would have resulted in a refusal to register. Were such a consultation initiated, Rajala's Copyright Registration would be invalidated and cancelled.

### 3. The Logos – Individually and as Set Out in the Single Sheet of the Deposit -- Lack Sufficient Originality and Creativity

Although Rajala's copyright registration would ordinarily constitute *prima facie* evidence of the validity of its claim, the analysis above shows that it is not entitled to such a presumption. Further, because the copyright registrar has no discretion to reject a copyright registration on grounds of originality, the validity of such certificates may ultimately prove that the designs are

not worthy of protection. Nimmer on Copyright § 7.21 [A] (1989). Presenting evidence that attacks the elements of a presumably valid copyright can lead to the cancellation of a copyright registration. Such elements include ownership, copyrightable subject matter, and originality. See *Syntek Semiconductor Co., Ltd. v. Microchip Technology Inc.*, 307 F.3d 775 (9th Cir.2002).

Section 308 of the Copyright Act provides:

> Originality is "the bedrock principle of copyright" and "the very premise of copyright law." *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 347 (1991) (citation omitted).

> "To qualify for copyright protection, a work must be original to the author," which means that the work must be "independently created by the author" and it must possesses "at least some minimal degree of creativity." *Id.* at 345 (citations omitted).

Section 308.2 provides:

> A work of authorship must possess "some minimal degree of creativity" to sustain a copyright claim. *Feist*, 499 U.S. at 358, 362 (citation omitted).

> "[T]he requisite level of creativity is extremely low." Even a "slight amount" of creative expression will suffice. "The vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious it might be.'" *Id.* at 346 (citation omitted).

> An author's expression does not need to "be presented in an innovative or surprising way," but it "cannot be so mechanical or routine as to require no creativity whatsoever." A work that it is "entirely typical," "garden-variety," or "devoid of even the slightest traces of creativity" does not satisfy the originality requirement. *Feist*, 499 U.S. at 362. "[T]here is nothing remotely creative" about a work that merely reflects "an age-old practice, firmly rooted in tradition and so commonplace that it has come to be expected as a matter of course." *Id.* at 363. Likewise, a work "does not possess the minimal creative spark required by the Copyright Act" if the author's expression is "obvious" or "practically inevitable." *Id*. at 363.

> Although the creativity standard is low, it is not limitless. *Id.* at 362. "There remains a narrow category of works in which the creative spark is utterly lacking or so trivial as to be virtually nonexistent. Such works are incapable of sustaining a valid copyright." *Id.* at 359 (citations omitted).

To qualify as an "original work of authorship", a work must be an independent creation and have sufficient creativity. *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 345 (1991).

See also *Compendium III: Compendium of Copyright Office Practices* § 313.4(B) (2014), which provides:

The term "*de minimis*" comes from the legal principle "*de minimis non curat lex,*" which means "the law does not take notice of very small or trifling matters." As the Supreme Court stated, "copyright protects only those constituent elements of a work that possess more than a *de minimis* quantum of creativity." *Feist*, 499 U.S. at 363. Works that contain no expression or only a *de minimis* amount of original expression are not copyrightable and cannot be registered with the U.S. Copyright Office.

In the paradigmatic and oft-cited Best Western Logo case, which provides a detailed analysis of "originality", the Copyright Office refused registration of the Best Western logo because as a work, it failed to meet the minimal requisite creative spark necessary for registration. As can be seen in the attached **Ex. 19A**, the Best Western logo under examination "... consists of a blue, soft-angled pentagon reminiscent of the shape of a house or other dwelling. A yellow border traces the inside of the pentagon. The words "Best Western" appear one on top of each other in yellow in the center of the pentagon. Above the text is a red, stylized graphic design of a 'crown' or a 'W.'" *Letter from United States Copyright Office to David Youssefi, Esq*, March 6, 2002, Copyright Off. Control No. 61-319-7499(B)] **[Ex. 19; and see Ex. 19A]**

To be entitled to copyright protection, unoriginal design elements, such as a simple circle and a few words in an unoriginal font, must be combined or arranged in an "original" manner, rather than in the mechanical application of a commonplace idea. *Feist*, 499 U.S. at 363. Registration of the Best Western logo was refused by the Office based on *Feist*.

Rajala (and others assisting in the creation of the original logos) accomplished nothing other than the use a single basic shape enclosing well-known words in an unoriginal, unartistic font. These are shapes and words in the public domain. As the Ninth Circuit has explained, "expressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law." *Satava v. Lowry,* 323 F.3d 805, 810 (9th Cir. 2003). Basic shapes and familiar objects are not original and thus not copyrightable. 37 C.F.R. § 202.1(a) (familiar symbols or designs are not subject to copyright [protection]).

Rajala claims copyright protection for a colored circle in which (typically) only two words are enclosed: namely, "_____ LOCAL." These designs are not in the least original. Further, the Copyright Office noted that the five-sided polygon, or pentagon, is a public domain geometric shape not subject to protection in and of itself. The small variations in shape with non-equilateral sides and curvilinearly shaped corners, which soften the angles, were considered to be

trivial variations. The blue and yellow coloring and the pin-striping were also insufficient to constitute sufficient creativity. Even the red "crown" or "W" was noted to be a commonplace design insufficient to support a copyright. **[Ex 19, p. 6; and see Ex. 19A]**

In the present case, the individual _____LOCAL logos comprising the Deposit, when analyzed individually, also fail to meet even the low threshold for copyright protection, in that the "creative spark is utterly lacking or so trivial as to be virtually nonexistent." Analogous to the Best Western logo, the individual Logos (with the exception of the CLEAN LOCAL and VIVA LOCAL iterations, both created in 2010) comprise nothing other than a simple geometric shape (a circle), with the words _____ LOCAL in a contrasting color rendered in a very simple sans seraph, block-type font (a simple typeface that Rajala, as an "expert" graphic designer, does not understand in the most elementary way) **[See Ex. 17, pp 23-27, 122-123]**. Unlike the Best Western logo, there is nothing nearly as creative as the house or dwelling shape, or the stylized crown or W, which might cleverly signify both "Western" and royalty, as if to suggest that guests of the Best Western might be treated like royalty.

As the Court in *Olander* indicated, "...the Ninth Circuit has held that courts should generally defer to the Register's interpretation of copyright statutes and regulations, see *Richlin v. Metro–Goldwyn–Mayer Pictures, Inc.*, 531 F.3d 962, 973 (9th Cir.2008) (discussing Ninth Circuit precedent in which the court deferred to the Register's reliance on the Compendium of Copyright Office Practices), and the few other courts who have addressed the issue have also deferred to the interpretation offered by the United States Copyright Office. See *Kay Berry, Inc. v. Taylor Gifts, Inc.,* 421 F.3d 199, 206 n. 2 (3d Cir.2005)."

Thus, decisions by the Register of the Copyright Office can be instructive. Numerous cases, more recent than the decision in Best Western, may be helpful to the Court in deciding how the Register would evaluate the GoLocal Logos under the originality standard. The Best Western case is but one of many that are on point relative to the works at issue. Several closely analogous official decisions of the Copyright Office regarding logos for which registrations, including the Nikken Logo case, Copyright Office Control Number: 61-209-9348 (C), October 7, 2004 **[Ex. 20]** Here, the Office denied registration to a logo comprising three design elements, a square with rounded edges, a circle and a broad band that has been bent to represent the upraised arm of a stylized human figure. Two of the bands are used to represent the body of a human figure and a circle is used for the head. The arrangement is repeated once to create two such

stylized human figures that are identical in all respects except coloration; one is black and the other is white. The figures are situated so that the raised arm portion of the black figure overlaps the raised arm portion of the white figure. Both figures are circumscribed within a square with rounded edges. **[***Id***. at 1, (Ex. 20)]**

The appeals Board of the Copyright Office applied the principles of the Compendium to find that the logo comprised only an arrangement of a few common elements that failed to exhibit a *de minimis* amount of creativity that falls within the narrow category of works in which the creative spark is utterly lacking or so trivial as to be virtually nonexistent. [*Id*., at 6 (**Ex. 20**), citing *Feist*, 499 U.S. at 357] It held that:

> "… consistent with <u>Feist</u>, the combination of relatively few elements – a square and a minor variation of a common symbol for man does – not rise to the level of copyrightable authorship required by <u>Feist</u>. Such a combination essentially brings together a few elements in an overall two-dimensional design which is, if not categorically commonplace, trivial and scant in its overall configuration." [*Id*., at 8 (**Ex. 20**)]

Another instructive decision of the Office is that relating to the GEEK SQUAD logo, for which protection was sought by Best Buy Enterprises, SR 1-73998603, April 13, 2012 **[Ex. 21]** In this case, the Copyright Office Review Board denied registration of the well-known Geek Squad logo, which is described as "an oval divided into an orange portion and a black portion. In the orange portion the word 'Geek' is written in black script. In the black portion, the word 'Squad' is printed in white." [*Id*., at 6 (**Ex. 21**)], which also reproduces the design for which registration was sought]

The Office denied registration and explained:

> "In light of the fact that 'Geek Squad' logo contains no original text or pictorial representations, it is unclear to the Review Board why you believe this case supports registration of this logo. The logo consists solely of the brand name 'Geek Squad' in a familiar oval shape with mere variation of coloring and lettering. Similar elements alone or in a trivial combination were not copyrightable in *Sara Lee*." [*Id*. at 8 (**Ex. 21**)]

Equally illustrative, and closely analogous to the present case, is the Office decision regarding the logo AVENUE OF THE SAINTS, SR 1-141959771, and SR 1-28587834, July 29, 2011. In this case, the Office described the work as "a design of a street sign presenting the words AVENUE OF THE SAINTS in white lettering on a blue background. The four words in the name are presented in two different type fonts with the letters of 'SAINTS' having simple thin-line shading which follows part of the shape of the individual letters. Between the words

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT BY SONOMA COUNTY GO LOCAL, INC AND SUSTAINING TECHNOLOGIES, LLC

Case. No. 15-CV-442-JST

'AVENUE' and 'OF THE' is an orange fleur-de-lis appears at the center-top of the design." [*Id.* at 5 (**Ex. 22**)], which also reproduces the design for which registration was sought]

The Copyright Office Review Board denied registration, finding:

"[T]he Office considers the sign/logo at issue here a unified entity, where the individual elements are considered in their inter-relationship to each other, i.e., the overall selection, coordination, and arrangement of the elements. When looked at in this sense, the arrangement of the elements is that of a name, presented in two typefaces and two colors, with one standard symbol positioned at the top center of the name. Under any standard, the pictorial authorship is simply too minimal to carry a copyright claim." [*Id.* at 9 (**Ex. 22**)]

Similarly, it is unclear why Rajala believes the GoLocal Logos support registration. Even a cursory review of the individual GoLocal Logos populating the single page of the Copyright Registration shows that they include fewer even potentially artistic elements than any of the logos that were at issue in the above-described unsuccessful registration efforts. The GoLocal Logos comprise nothing more than a circle with an ordinary color and very ordinary typeface with only two words, which if not categorically commonplace, are trivial and scant in their overall configuration. Under any standard, the pictorial authorship is simply too minimal to carry a copyright claim. Thus, none of the individual logos includes sufficient originality to warrant copyright protection.

Further, even if the Deposit for the Copyright Registration at issue in this case is properly treated as a compilation, the compilation lacks sufficient originality and/or creativity to warrant copyright protection. Rajala's selection, coordination, and arrangement of the individual logos were mechanical and routine, commonplace, and obvious, involving nothing more than a mechanical placement in rows and columns with no possible novel or original ordering to create a distinct impression, such that even the compilation lacks sufficient originality and/or creativity to warrant copyright protection.

## D.   GOLOCAL OWNS COPYRIGHT RIGHTS IN THE LOGOS

While there are material issues as to authorship of the Original Logos, and thus whether they are joint works, those are not issues Defendants seek to have adjudicated at this time. More pertinently, the GoLocal Logos developed after November 1, 2009, when Rajala was hired as Executive Director of SCGLC, are "works for hire" under the U.S. Copyright laws, such that upon completion of such works for hire, all copyright rights in and as to those logos, if any there be, are owned by SCGLC.

While employed by SCGLC, design and marketing duties were within the scope of Rajala's employment as Executive Director. While employed by SCGLC, Rajala continued to design logos and the like on behalf of SCGLC. Certain of the logos Rajala designed while employed by SCGLC are among the GoLocal Logos over which Rajala now claims ownership and which made up part of the Deposit submitted to the Copyright Office as part of the application process for her Copyright Registration.

Accordingly, if the Copyright Registration were valid, SCGLC is the joint author, owner, and/or joint owner of the Copyright Registration and/or underlying substantive rights by operation of the work for hire doctrine.

### E. THE SINGLE SHEET REGISTRATION IS A COMPILATION THAT INCLUDES MATERIAL NOT IDENTIFIED AS PREEXISTING, UNLAWFULLY USED BY RAJALA, AND PROVIDES THIN PROTECTION THAT SCGLC HAS NOT INFRINGED

Even if the Copyright Registration and the underlying substantive copyrights were considered to be valid, and further assuming that Rajala was found to be the rightful owner of the Copyright Registration and underlying substantive copyrights, SCGLC has not infringed the Copyright Registration or the substantive copyrights.

Rajala's rights, if any, are defined by and limited to what is shown in the Deposit. The Deposit depicts a compilation (or collective work) comprising numerous previously published discrete and separate logo images. Compendium III, at Section 508.1, explains:

The Copyright Act defines a compilation as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101.

As the legislative history explains, "[a] 'compilation' results from a process of selecting, bringing together, organizing, and arranging previously existing material of all kinds, regardless of whether the individual items in the material have been or ever could have been subject to copyright."

"[t]he term 'compilation' includes collective works," which are discussed in more detail in Section 509 below. 17 U.S.C. § 101. Creating a collective work also "involve[s] the selection, assembly, and arrangement of 'a number of contributions,'" because this type of work "is a species of 'compilation.'" *Ibid.* Then, as set out in Compendium III, Section 508.2:

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT BY SONOMA COUNTY GO LOCAL, INC AND SUSTAINING TECHNOLOGIES, LLC
Case. No. 15-CV-442-JST

The fact that a compilation has been registered with the U.S. Copyright Office does not necessarily mean that every element of the work is protected by copyright. A claim to copyright in a compilation "extends only to the material contributed by the author of such work" and does not "imply any exclusive right in the preexisting material." 17 U.S.C. § 103(b). The data, facts, or other uncopyrightable material that appears in a compilation is not protected by the copyright in that work. See *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 360 (1991) (stating that "the copyright in a compilation does not extend to the facts it contains"). A registration for a compilation does not cover any of the preexisting material or data that appears in the compilation unless that material or data is expressly claimed in the registration. Likewise, a registration for a compilation does not cover any previously published material, previously registered material, public domain material, or third party material that appears in the compilation. "This inevitably means that the copyright in a factual compilation is thin. Notwithstanding a valid copyright, a subsequent compiler remains free to use the facts contained in another's publication to aid in preparing a competing work, so long as the competing work does not feature the same selection and arrangement." *Id.* 499 U.S. at 349.

When registering a compilation, the applicant should identify the preexisting material or data that the author selected, coordinated, and/or arranged. If the compilation contains an appreciable amount of previously published material, previously registered material, public domain material, or material owned by a third party, the applicant generally should limit the claim to the new material that the author contributed to the work and the unclaimable material should be excluded from the claim. For guidance on this procedure, see Chapter 600, Section 621.8(E).

The author of a compilation may claim copyright in an original selection, coordination, and/or arrangement of preexisting material, provided that the material has been used in a lawful manner. Section 103(a) of the Copyright Act states that the copyright in a compilation "does not extend to any part of the work" that "unlawfully" uses preexisting material. As discussed in Chapter 300, Section 313.6(B), this provision is intended to prevent "an infringer from benefiting, through copyright protection, from committing an unlawful act." H.R. REP. NO. 94-1476, at 57, reprinted in 1976 U.S.C.C.A.N. at 5671.

The Court will immediately appreciate from an examination of the Copyright Registration that Rajala failed to identify the preexisting materials (the previously published logos) that are coordinated and arranged on the single sheet. Indeed, she identified all of them as if they were all published at the same time as a group, yet as individual logos they all preexisted the "arrangement" presented on the single page of logos.

Additionally, Rajala obtained protection in parts of the work that unlawfully uses preexisting material belonging to SCGLC, without SCGLC consent or permission. As argued above, SCGLC owns the logos created while Rajala was employed with SCGLC, and Rajala cannot be permitted to appropriate images authored by and owned by another party, to obtain a

registration in a compilation including the misappropriated works without the owner's permission, and then to claim them as her own in an attempt to prevent the owner from their proper and lawful use.

Summarily: none of the logo images in the registered compilation, taken alone, is protectable under the copyright laws. If there is any protection, it resides only in the selection, arrangement, and organization of the logo images on a single sheet so as to form a composite image that makes its own impression on a viewer. Even that arrangement, however, is mechanical and commonplace, as it consists in nothing more than the placement of the circular logos in rows and columns, a mechanical and simplistic arrangement that does nothing other than separate them spatially so as to make each distinct from the others.

Moreover, SCGLC has never copied, reproduced, published or otherwise used the protectable aspects of the Deposit and accordingly, has not infringed Rajala's Copyright Registration or underlying substantive copyrights. As noted, the individual logos are not protectable, and any combinations used by SCGLC are not substantially similar to Rajala's Copyright Registration or underlying substantive copyrights, if any there be. Accordingly, SCGLC's use of individual logos has not and does not infringe Rajala's Copyright Registration.

## V.    CONCLUSION

Rajala owns nothing at issue in this case: (1) There are no copyright protectable elements in the individual logos. (2) The deposit is itself a mere mechanical application of a commonplace idea, assembling in no particularly creative way the unprotectable individual logos. (3) The predicate to this suit is a registration based on a Deposit that constitutes an improper group work registration and/or an improper compilation of logos. (4) SCGLC owns many of the logos included in the Deposit and those were used entirely without permission by Rajala in obtaining the Registration. (5) Rajala created many of the logos appearing on the Deposit while working in the scope of her employment with SCGLC. Accordingly, the copyright claims simply lack merit and Defendants are entitled to judgment as to the copyright claims and the dependent false advertising claim as a matter of law.

Dated:  June 28, 2016                Respectfully submitted,

                                    **STAINBROOK & STAINBROOK, LLP**

                    By:    /s/ Craig M. Stainbrook
                                    Craig M. Stainbrook
                                    *Attorneys for Defendants*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT BY SONOMA COUNTY GO LOCAL, INC AND SUSTAINING TECHNOLOGIES, LLC
Case. No. 15-CV-442-JST